# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan Humphrey Lefkow | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5014 | **DATE** | 4/18/2002 |
| **CASE TITLE** | Ocean Atlantic Development vs. Willow Tree Farm et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Memorandum Opinion and Order entered. Plaintiff's Motion to Compel [#29] is denied; Plaintiff's motion to Strike Affidavits [#41] is granted in part and denied in part. Status hearing set for 5/15/02 at 9:00 a.m. **in Courtroom 2230.** AK

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| ✓ | Copy to judge/magistrate judge. | |

FT/*secy*  courtroom deputy's initials

2
number of notices

APR 1 9 2002
date docketed

*Lyn*
docketing deputy initials

4/19/2002
date mailed notice

FT
mailing deputy initials

U.S. DISTRICT COURT CLERK
02 APR 18 PM 2: 29

Date/time received in central Clerk's Office

**Document Number**

45

DOCKETED
APR 19 2002

)
OCEAN ATLANTIC DEVELOPMENT )
CORPORATION, )  No. 01 C 5014
)
          Plaintiff, )
)  Judge Joan H. Lefkow
    v. )
)  Magistrate Judge
)   Arlander Keys
)
WILLOW TREE FARM, L.L.C., )
DRH CAMBRIDGE HOMES, INC., )
ELDA ARNHOLD, and BYZANTIO, )
L.L.C. )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff Ocean Atlantic
Development Corporation's ("Ocean Atlantic") Motion to Compel
testimony and the production of allegedly privileged documents.
In addition, Ocean Atlantic contends that the submission of
redacted affidavits in response to its Motion constitutes an
impermissible *ex parte* communication with the Court, and that the
affidavits should be stricken.  For the reasons set forth below,
Ocean Atlantic's Motion to Compel is denied; and its Motion to
Strike is granted in part, and denied in part.

### Background Facts

In its Motion to Compel, Ocean Atlantic asserts that it is
entitled to discover conversations between Edward Petka, a

witness in this case, Steven Shobat, Mr. Petka's attorney, and William Campbell, attorney for Defendant Willow Tree Farm, L.L.C. ("Willow Tree")[1]. Mr. Petka refused to disclose these conversations, on the ground that they were privileged. Full appreciation of Mr. Petka's claim of privilege requires familiarity with not only the underlying litigation, but also with a previous lawsuit between Mr. Petka's former client, Mrs. Elda Arnhold, and the Ocean Atlantic Woodland Corporation ("Ocean Atlantic Woodland"), which is affiliated with the Plaintiff in this case.

### A. Elda Arnhold v. Ocean Atlantic Woodland.

Elda Arnhold and her neighbor[2] (hereinafter referred to collectively as "Mrs. Arnhold") owned large family farms adjacent to one another, outside of Plainfield, Illinois. On August 6, 1997, Mrs. Arnhold entered into a contract to sell her farm land (i.e. the Property) to Ocean Atlantic Woodland. The original contract contemplated an initial closing by November, 1997, and required that the initial closing, or specified conditions for closing, occur no later than August 6, 1998, or either party would have the right to terminate the contract.

---

[1] Initially, Ocean Atlantic also sought to discover the Joint Defense Agreement itself. Mr. Petka has responded that no such document exists. Ocean Atlantic does not contest this assertion.

[2] Mrs. Arnhold's neighbors were, primarily, Mr. Byzantio and his son, Mr. Argoudelis.

But the First Closing did not occur on August 6, 1998. Each party placed the blame for the delay squarely on the other, and their business relationship began on a long, downward spiral that continues to this day. Nevertheless, the parties agreed to a series of date extensions, which were embodied in the First Amendment, executed on November 10, 1997[3], and then a Second Amendment, executed on or about April 14, 1999. The Second Amendment extended the First Closing date to no later than November 30, 1999, but, once again, the First Closing did not occur by this date.

Believing that Ocean Atlantic Woodland was concocting yet another delay tactic, on November 22, 1999, Mrs. Arnhold filed a lawsuit in federal court for a declaratory judgment that the

---

[3]After the First Amendment, Ocean Atlantic Woodland filed a federal lawsuit, in November 1998, requesting specific performance for Plaintiffs to sign the petition and annexation agreement, a necessary step for closing pursuant to the contract and First Amendment. According to Plaintiffs, they signed the petition and annexation agreement on December 1, 1998, but were, nonetheless, still served with the lawsuit in January 1999. In April 1999, Ocean Atlantic Woodland voluntarily dismissed the lawsuit (and the Second Amendment was executed). The only relevance of this dispute to the present controversy is that it underscores the tension between the parties, and further illustrates, as will be discussed in more depth *infra*, that a specific closing date was always important to Plaintiffs. For instance, paragraph 13 of Ocean Atlantic Woodland's Complaint for Specific Performance, in case No. 98 C 7140, states that Plaintiffs refused to execute the necessary petition and annexation agreement unless Ocean Atlantic Woodland committed to a first closing date no later than December 31, 1998. Therefore, as early as November 1998, Ocean Atlantic Woodland knew that Plaintiffs were insistent on specific dates for closing.

3

contract would be terminated if the First Closing did not occur by November 30, 1999, pursuant to the Second Amendment. Judge Holderman ultimately denied Plaintiffs' summary judgment motion, and in the Fall of 2000, the parties settled the lawsuit by entering into the October 26, 2000 Settlement Agreement. Throughout her contract negotiations and during these proceedings, Mrs. Arnhold was represented primarily by Mr. Petka.

**B. Mrs. Arnhold's "Drop Dead" Settlement Agreement.**

The parties' negotiations, which culminated in a Settlement Agreement, revealed that the following were material aspects of the Settlement Agreement: (1) there would be one closing for the full purchase price of the Property (as opposed to three, as the initial contract had contemplated); (2) January 25, 2001 would be the final, "drop-dead" date for closing; and (3) the issue of the sewer moratorium would be waived.

Nonetheless, closing did not occur on January 24, 2001 – the date selected for closing by Ocean Atlantic Woodland – nor on January 25, 2001, the absolute, final "drop-dead" date in the Settlement Agreement. A glitch in Ocean Atlantic Woodland's paperwork prevented the company from securing the funds necessary to effectuate closing until January 26, 2001. When Ocean Atlantic Woodland attempted to persuade Mrs. Arnhold to close on that day, she told Ocean Atlantic Woodland, essentially, to "drop dead."

4

On February 7, 2001, Ocean Atlantic Woodland filed a Motion to Enforce the Settlement Agreement. On February 14 and 15, 2001, this Court held an evidentiary hearing, and heard from Mr. Farraguto, Ocean Atlantic's President, Mr. Argoudelis, and Mr. Petka. During the hearing, Mr. Petka testified as a witness, and he did not appear as Mrs. Arnhold's attorney. Instead, Mrs. Arnhold was represented by Messrs. Theodore Poulos and William Campbell of Cotsirilos, Stephenson, Tighe & Streicker.

The Court, after fully considering the briefs and the hearing testimony, concluded that Ocean Atlantic Woodland's failure to close on the Property on or before January 25, 2001 was a material breach of the parties' agreement. *Arnhold v. Ocean Atlantic Woodland Corp.,* 132 F. Supp.2d 662 (N.D. Ill. 2001) *aff'd,*--F.3d--, 2002 WL 435513 (7th Cir. Mar. 21, 2002). Because Ocean Atlantic Woodland breached a material term of the Settlement Agreement, it forfeited all rights to the Property. *Id.*

The Court's decision cleared the way for Mrs. Arnhold to sell the Property to another buyer, which she did shortly thereafter. In July of 2001, Mrs. Arnhold sold the Property to DRH Cambridge Homes, Inc. ("Cambridge Homes"), which agreed to indemnify Mrs. Arnhold in the event that she was sued by Ocean Atlantic. Once again, Mr. Petka represented Mrs. Arnhold during these contract negotiations.

## C. Ocean Atlantic v. Willow Tree

The impact of the Court's decision on Ocean Atlantic was substantial.  Not only did Ocean Atlantic lose its battle to purchase the Property for the previously agreed upon price, but it also forfeited the improvements it had made to the Property in preparation for Ocean Atlantic's planned residential development. Apparently, the Court's ruling also upset Ocean Atlantic's business relationship with the owners of the farm adjacent to Mrs. Arnhold's Property, Willow Tree Farm.

In preparation for the residential development it had planned for Mrs. Arnhold's farm, Ocean Atlantic had negotiated an easement agreement ("Easement Grant") with the owners of Willow Tree Farm.[4]  On December 31, 1998, Ocean Atlantic and Willow Tree recorded an easement granting Ocean Atlantic the right to construct a storm drainage water pipeline ("pipeline") across Willow Tree to service the proposed residential development.  The Easement Grant called for construction of the pipeline to be completed by June 30, 2001.

Following this Court's February 28, 2001 ruling, however, Willow Tree took the position that Ocean Atlantic had no further easement right against Willow Tree Farm.  Since Ocean Atlantic

---

[4] Although it was Ocean Atlantic Woodland Corporation that entered into the contract to purchase Mrs. Arnhold's farm, Ocean Atlantic Development Corp. ("Ocean Atlantic") negotiated the Easement Grant with Willow Tree.

6

Woodland could no longer construct its residential development, Willow Tree reasoned, Ocean Atlantic's plans to construct the pipeline were similarly futile. In the meantime, Willow Tree allegedly entertained another offer to purchase the easement from Mrs. Arnhold.

During the summer of 2001, Mrs. Arnhold and her attorney, Mr. Petka, purportedly contacted the owners of Willow Tree Farm in an effort to secure an easement for Cambridge Homes. Apparently, Cambridge Homes came to the same realization that Ocean Atlantic had years earlier: a successful residential development on the Property could only be achieved by constructing a pipeline across Willow Tree Farm. After an allegedly stormy relationship with Ocean Atlantic, the owners of Willow Tree Farm were purportedly apprehensive about negotiating a second easement agreement with yet another large development company. Cambridge Homes correctly guessed that Willow Tree's owners would be more receptive to an offer coming from their neighbors; Mrs. Arnhold, Mr. Byzantio, and Mr. Petka. By July 1, 2001, Mrs. Arnhold and Mr. Petka had purportedly helped to secure the easement agreement on behalf of Cambridge Homes. Cambridge Homes and Mrs. Arnhold agreed to indemnify Willow Tree in the event that it was sued by Ocean Atlantic.

Even before Cambridge Homes could record this easement agreement, Ocean Atlantic had seen the handwriting on the wall.

Ocean Atlantic filed the instant suit against Willow Tree on June 29, 2001. The case was assigned to Judge Lefkow. In its Complaint, Ocean Atlantic alleges that Willow Tree breached its contract by failing to provide written approval of specifications and by denying Ocean Atlantic access to its property to begin construction. Ocean Atlantic seeks specific performance and breach of contract damages.

In defense of this suit, Willow Tree retained attorney William Campbell -- the same attorney that had represented Mrs. Arnhold in the post-settlement hearing before this Court on February 14 and 15, 2001. It soon became clear that many of the persons who had figured prominently in Ocean Atlantic Woodland's suit against Mrs. Arnhold would play critical roles in the present litigation as well.

### D. Mr. Petka's Deposition

On January 31, 2002, Judge Lefkow referred several discovery matters to this Court. One of those discovery matters involved Ocean Atlantic's desire to depose Mr. Petka about his and Mrs. Arnhold's role in helping to secure Cambridge Homes' easement on Willow Tree Farm. On January 4, 2002, Ocean Atlantic issued a subpoena to Mr. Petka, directing the production of certain documents and his deposition on January 31, 2002.

After Mr. Petka received Ocean Atlantic's subpoena, he contacted Mr. Campbell, who was currently representing Willow

8

Tree and had previously represented Mrs. Arnhold. Mr. Campbell recommended that Mr. Petka retain attorney Steven Shobat for representation, which he did on January 28, 2002. Mr. Shobat, a newcomer to this controversy, negotiated to postpone Mr. Petka's deposition until February 13, 2002.

On February 2, 2002, Mr. Petka and Mr. Shobat discussed the propriety of asking Mr. Campbell to provide Mr. Shobat with information about the proceedings, in an effort to bring Mr. Shobat "up to speed" prior to Mr. Petka's deposition. Mr. Petka acknowledged that confidential information would likely be discussed at such a meeting, and Mr. Shobat assured Mr. Petka that this information would remain confidential despite the disclosures.

Mr. Shobat contacted Mr. Campbell later that day, and the two attorneys agreed that any information shared in the briefing would be privileged pursuant to a joint defense agreement. Mr. Campbell thoroughly explained the history between Ocean Atlantic and Mrs. Arnhold, Willow Tree, and Mr. Petka, and he fleshed out the details of the current suit. In doing so, Mr. Campbell revealed to Mr. Shobat information about litigation strategies and impressions, and other confidential information.

On the morning of February 13, 2002, Mr. Petka met with both Mr. Shobat and Mr. Campbell to prepare for his deposition. Mr. Shobat again explained to Mr. Petka that Mr. Campbell was

9

participating in the deposition preparation to help answer questions and concerns, and that his presence would not waive the attorney-client privilege. Mr. Campbell was not present during the entire meeting, but rather, walked in and out of the room while Mr. Shobat was preparing Mr. Petka for his deposition.

During the deposition, counsel for Ocean Atlantic discovered that Mr. Campbell had been present during meetings between Mr. Shobat and Mr. Petka. Ocean Atlantic insisted that Mr. Campbell's presence destroyed the attorney-client privilege with respect to these conversations. Mr. Shobat retorted that the conversations were nevertheless protected, because he and Mr. Campbell had entered into a joint defense agreement on behalf of their respective clients. Mr. Shobat instructed Mr. Petka not to answer any questions tending to reveal the substance of the conversations among and between the three men, and any questions concerning the existence of the joint defense agreement.[5]

---

[5] Notably, two days after Mr. Petka's deposition, Ocean Atlantic filed an Amended Complaint, adding a tortious interference with contract claim against Cambridge Homes, Inc., Byzantio L.L.C., and Mrs. Arnold. Ocean Atlantic alleges that Mrs. Arnhold and Cambridge Homes induced Willow Tree to breach its easement agreement with Ocean Atlantic by offering to purchase the same easement and by promising to indemnify Willow Tree against a lawsuit by Ocean Atlantic to enforce the Easement Agreement. Despite his admitted involvement in negotiating on Cambridge Homes' behalf, Mr. Petka has not yet been named a defendant in this lawsuit.

### E.  Ocean Atlantic's Motion to Compel

On February 14, 2002, Ocean Atlantic sent Mr. Shobat a letter, requesting that he immediately produce the joint defense agreement.  Ocean Atlantic contended that the agreement was not protected by the attorney-client privilege, and was responsive to Ocean Atlantic's earlier subpoena seeking any agreements between Mrs. Arnhold, her attorneys, and Willow Tree.  Mr. Shobat responded only that he did not believe that a joint defense agreement was covered by Ocean Atlantic's subpoena.

On February 21, 2002, Ocean Atlantic sent Mr. Shobat another letter, seeking the production of the joint defense agreement. Although Mr. Shobat purportedly responded on February 23, 2002 that the joint defense agreement was oral and that there was no document to produce, Ocean Atlantic did not receive this letter until February 26, 2002 - one day after Ocean Atlantic had filed its Motion to Compel Production of the Joint Defense Agreement and Mr. Petka's testimony.

Ocean Atlantic initially took the position that courts did not recognize oral joint defense agreements, and that nondefendants, such as Mr. Petka, could not be party to such agreements.  Contrary caselaw refined its position, and Ocean Atlantic properly noted that, while a joint defense agreement could exist between Mr. Petka and Willow Tree, they had failed to present any evidence demonstrating that it did, in fact, exist.

At a hearing on March 8, 2002, this Court agreed and directed
Messrs. Shobat and Campbell to submit affidavits demonstrating
the existence of the joint defense agreement.

On March 15, 2002, Messrs. Petka, Shobat, and Campbell each
submitted, *in camera*, affidavits to this Court describing the
creation of the joint defense agreement.  Ocean Atlantic received
heavily redacted copies of these affidavits.  Ocean Atlantic
subsequently filed a Motion to Strike the affidavits, complaining
that they constitute impermissible *ex parte* communications with
the Court, and contain improper legal arguments and conclusions.

### Discussion

Ocean Atlantic's Motions raise, primarily, two issues that
must be addressed by the Court: 1) whether Mr. Petka and Willow
Tree have demonstrated the existence of a recognizable joint
defense agreement; and 2) whether the submission of *in camera*
affidavits constitutes improper ex parte contact with the Court.
The Court will address each contention in turn.

**I. Joint Defense Agreements.**

The attorney-client privilege is an exception to the spirit
of broad disclosures envisioned by the Federal Rules of Civil
Procedure.  Courts permit parties to keep such communications
confidential to encourage "full and frank communication between
attorneys and their clients."  *Upjohn Co. v. United States,* 449
U.S. 383, 389 (1981).  However, the party asserting such a

privilege bears the burden of demonstrating its existence.
*United States v. Evans*, 113 F.3d 1457, 1461 (7ᵗʰ Cir. 1997).

The joint defense privilege is an extension of the attorney-client privilege . *See Id. at* 1466 (noting that the joint defense privilege is more aptly referred to as the common interest privilege); *Securities Investor Protection Corp. v. Stratton Oakmont, Inc,* 213 B.R. 433, 435 n.1 (S.D.N.Y. 1997)(noting the distinction between the joint client doctrine and the common interest doctrine). "The joint defense privilege protects communications between an individual and an attorney for another when the communications are 'part of an ongoing and joint effort to set up a common defense strategy.'" *In re Grand Jury Subpoena,* 274 F.3d 563, 572 (1ˢᵗ Cir. 2001) (quoting *United States v. Bay State Ambul.*, 874 F.2d 20, 28 (1ˢᵗ Cir. 1989)). "Because the privilege sometimes may apply outside the context of actual litigation, what the parties call a 'joint defense' privilege is more aptly termed the 'common interest' rule." *In re Grand Jury Subpoena,* 274 F.3d at 572.

The burden of demonstrating the existence of a joint defense agreement falls on the person claiming it. *United States v. Weissman,* 195 F.3d 96 (2d Cir. 1999). A party seeking to assert the joint defense privilege must demonstrate that: 1) the communications were made in the course of a joint defense effort; 2) the statements were made in furtherance of that effort; and 3)

the privilege has not been waived. *In re Bevill, Bresler &*
*Schulman Asset Management Corp.,* 805 F.2d 120, 126 (3d Cir.
1986)[6].

Although "[p]rivileges should be narrowly construed and
expansions cautiously extended," *Weissman,* 195 F.3d at 100,
courts have found that an oral joint defense agreement may be
valid. *See, e.g., In re Grand Jury Subpoena,* 274 F.3d at 569-70.
In addition, a person need not be a litigant to be a party to a
joint defense agreement. *Russell v. General Elect. Co.,* 149
F.R.D. 578, 580 (N.D. Ill. 1993) (the joint defense privilege
apples to parties or potential parties sharing a common interest
in the outcome of a particular claim.)

In this case, the affidavits submitted evidence the fact
that Mr. Shobat and Mr. Campbell entered into a joint defense
agreement on behalf of their clients prior to Mr. Petka's
deposition. This does not resolve the issue of whether the joint
defense privilege applies, however, because: 1) Mr. Petka and
Willow Tree must demonstrate that they have a common interest in
the outcome of this litigation; and 2) Ocean Atlantic contends
that attorneys cannot enter into joint defense agreements on
behalf of their clients.

---

[6] Ocean Atlantic does not contend that the underlying
conversations between Mr. Shobat and Mr. Petka were not
privileged; rather, it contends that Mr. Campbell's presence
destroyed the privilege. Nor does it contest Mr. Petka's ability
to satisfy the remaining elements of the joint defense privilege.

**A. Mr. Petka and Willow Tree Have a Common Interest In the Outcome of this Litigation.**

The first question is relatively straightforward. As detailed in his deposition, Mr. Petka played a substantial role in helping to secure the easement from Willow Tree on behalf of Cambridge. Following Mr. Petka's deposition, Ocean Atlantic amended its Complaint to add a claim of tortious interference against Mrs. Arnhold, Byzantio, and Cambridge Homes for conduct that Mr. Petka advised and/or facilitated. In addition, Mr. Petka advised Mrs. Arnhold to agree to indemnify Willow Tree for any litigation by Ocean Atlantic arising out of the easement, with full knowledge of Ocean Atlantic's prior lawsuit against her.

Although Ocean Atlantic lacks standing to file a negligence claim against Mr. Petka,[7] this does not mean that Ocean Atlantic cannot raise any claim against him. In this case, it is not entirely clear that Mr. Petka did not cross the line from legal advisor to active participant in the easement negotiations. Cambridge Homes was convinced that its best chance for securing an easement from Willow Tree –which was allegedly apprehensive about dealing with another development company – was to rely upon Mrs. Arnold and Mr. Petka's friendly relationship with Willow

---

[7] And while Mrs. Arnhold does have standing to pursue such a claim against Mr. Petka, the advisability of such action is likely dependant upon the outcome of this lawsuit.

Tree Farm's owners and attorney. Mr. Petka was willing and able to provide such assistance. As such, it may only be a matter of time before Ocean Atlantic adds Mr. Petka's name to the list of Defendants that allegedly tortiously interfered with its contractual rights.

As such, the Court concludes that Mr. Petka's interest in this case stems from his desire to limit both his and his client's legal exposure. *See generally, Blanchard v. Edgemark Financial Corp.,* 192 F.R.D. 233, 237 (N.D. Ill. 2000) (noting that the common interest must be a legal interest, not merely a financial or commercial interest). The indemnity agreements, combined with the fact that Mrs. Arnhold has already been named as a Defendant in this lawsuit, further solidify Mr. Petka's legal interest in the outcome of this case. Given Mr. Petka's substantial involvement in the matters underlying this litigation, the Court finds that he has a common interest with Willow Tree and the other Defendants in the outcome of this case.

### B. Mr. Shobat and Mr. Campbell Entered into the Joint Defense Agreement on Behalf of Their Clients.

The second question presents something of a challenge. The Court finds reasonable Ocean Atlantic's argument that, given the contemplated exchange of confidential information, two attorneys should not be permitted to enter into a joint defense agreement

without at least consulting their clients first.[8]  In this case, there is no evidence that Willow Tree has consented to enter into a joint defense agreement with Mr. Petka.  Although Mr. Petka does not specifically reference a joint defense agreement in his affidavit, it is clear that he gave Mr. Shobat permission to collaborate with Mr. Campbell about privileged matters on the condition that the information remain confidential.

In addition, the Court agrees that Messrs. Shobat and Campbell's rather lackadaisical response to Ocean Atlantic's demand to produce the joint defense agreement does not instill confidence that this agreement had been well-defined prior to Mr. Petka's deposition.

Nevertheless, the Court cannot analyze the existence of a joint defense agreement in a vacuum.  Given the history between these parties, Mr. Petka, and these attorneys, the Court finds that the joint defense privilege protects Mr. Petka's conversations with Mr. Shobat and Mr. Campbell, even though Willow Tree did not consent to a joint defense agreement prior to Mr. Petka's deposition.

The genesis of the present suit, as well as Ocean Atlantic Woodland's suit against Mrs. Arnhold, can be traced to Ocean

---

[8] Ocean Atlantic argues that, because lawyers must "preserve the confidences and secrets of a client," Canon 4 of the Code of Professional Responsibility, lawyers must first obtain the client's knowing waiver of that confidentiality before sharing those confidences with a third party.

Atlantic's frustrated desire to develop a residential community on Mrs. Arnhold's farm. The two suits are interrelated; the outcome of Ocean Atlantic Woodland's suit against Mrs. Arnhold proved to be determinative of who would develop Mrs. Arnhold's farm, and the Willow Tree easement is critical to the construction of that development[9]. It is, therefore, not surprising that the present dispute impacts many of the same people involved in the prior dispute, and that Mr. Petka's and the Defendants' interests are aligned.

After Ocean Atlantic lost its first suit against Mrs. Arnhold, Mrs. Arnold sold her property to Cambridge Farms. Shortly thereafter, she and Mr. Petka helped convince Willow Tree to grant Cambridge an easement similar to Ocean Atlantic's Easement Grant. Willow Tree agreed, somewhat reluctantly, to sell an easement to Cambridge Homes on the condition that both Cambridge Homes and Mr. Petka's client, Mrs. Arnhold, agree to indemnify Willow Tree in the event it was sued by Ocean Atlantic. Upon Mr. Petka's advice, Mrs. Arnhold is, at least financially, standing in Willow Tree's shoes in this litigation.

Similarly, the attorneys on both sides of this dispute were involved in the prior litigation; Messrs. Farrell and Hughes

---

[9] One struggles to understand the purpose to be served by permitting Ocean Atlantic to construct the pipeline drain on Willow Tree Farm, other than to frustrate Cambridge Homes' own development plans.

represented Ocean Atlantic Woodland, and both Mr. Petka and Mr. Campbell represented Mrs. Arnhold in the prior suit. During the prior suit, Mr. Petka and Mr. Campbell collaborated in their defense of Mrs. Arnhold. The only true newcomer to this litigation is Mr. Shobat, who was understandably concerned about digesting the acrimonious history of this case prior to his client's deposition.

The Court finds that it is entirely credible that Mr. Shobat and Mr. Campbell would agree to collaborate in the present suit. Mr. Petka and Willow Tree both have a substantial interest in defeating Ocean Atlantic's lawsuit. In addition, Mr. Petka and Mr. Campbell have a long history of defending against Ocean Atlantic's lawsuits.

Given this history, the Court further finds that, under the unique facts of this case, it was appropriate for Mr. Campbell to act on behalf of his client. According to Mr. Campbell's affidavit, Willow Tree had authorized Mr. Campbell to take any and all reasonable steps on Willow Tree's behalf, including making tactical and strategic decisions. The decision to enter into a joint defense agreement with Mr. Petka certainly falls into this category.

In addition, the concerns regarding the waiver of confidentiality highlighted by Ocean Atlantic are simply not as significant in this particular case. As Willow Tree is well

aware, Mr. Petka is already intimately familiar with the facts giving rise to Willow Tree's decision to grant Cambridge Homes the easement. Ocean Atlantic has even suggested that Mr. Petka and the Defendants are conspiring to deprive it of its rights under the Easement Grant.

Given Willow Tree's limited liability (due to the indemnity agreement), Mr. Campbell's authority to act on its behalf, and Willow Tree's relationship with Mr. Petka, the Court finds that Willow Tree's failure to consent to the joint defense agreement prior to Mr. Petka's deposition does not render it void. Although Mr. Campbell's decision to enter into the agreement without first consulting his client was hardly the model of good judgment, the privilege nevertheless stands.

## II. The Submission of *In Camera* Affidavits Was Inappropriate

During the March 8, 2002 hearing, this Court directed Messrs. Shobat and Campbell to submit affidavits in support of their claim that a joint defense agreement existed. In response, Messrs. Shobat and Campbell submitted three affidavits to the Court for *in camera* inspection. Ocean Atlantic received only heavily redacted copies of these affidavits.

The Court finds that there is no basis for redacting these affidavits; they contained neither confidential nor highly sensitive information that warrants such treatment. *See generally, Jessup v. Luther,* 277 F.3d 926, 928 (7th Cir. 2002)

20

(discussing documents filed under seal.) "The facts necessary to establish the attorney-client privilege are not themselves privileged." *B.F.G. of Illinois v. Ameritech Corp.*, No. 99 C 4604, 2001 WL 1414468, at *4 (N.D. Ill. Nov. 13, 2001). The Court agrees with Judge Norgle; accepting these affidavits *in camera* would constitute an impermissible *ex parte* communication with the Court. *Id.* Therefore, the Court orders Messrs. Shobat and Campbell to produce unredacted copies of the submitted affidavits to Ocean Atlantic.

Ocean Atlantic also asserts that the submitted affidavits contain impermissible legal argument, in direct violation of this Court's express directive barring the parties from making further legal argument on the issue. The Court agrees that the affidavits, which reference numerous citations, contain impermissible legal conclusions and arguments. *See Zilker v. Klein,* 540 F. Supp. 1196, 1997 n. 1 (N.D. Ill. 1982) (the purpose of an affidavit is to set forth evidentiary facts, not to advance legal arguments). To the extent the affidavits contain impermissible legal conclusions or arguments, they are disregarded. However, the Court declines Ocean Atlantic's invitation to strike the affidavits in their entirety.

### Conclusion

Ocean Atlantic seeks to compel Mr. Petka to disclose his conversations with Messrs. Shobat and Campbell. The Court finds

that there is enough evidence to establish that the communications were protected under the joint defense privilege. However, the Court further finds that the affidavits submitted in an effort to demonstrate the existence of this privilege should not have been redacted. Because the submissions constitute impermissible *ex parte* communications with the Court, the Court directs Messrs. Shobat, Petka, and Campbell to produce to Ocean Atlantic unredacted copies of these affidavits. In addition, the Court agrees that, to the extent that these affidavits contain impermissible legal argument, they are stricken. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion To Compel the Production of Documents and Testimony be, and the same hereby is, **DENIED**. Plaintiff's Motion to Strike is **GRANTED in part**, and **DENIED in part**.

Dated: April 18, 2002        ENTER:

ARLANDER KEYS
United States Magistrate Judge