# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan Humphrey Lefkow | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5014 | **DATE** | 8/22/2002 |
| **CASE TITLE** | Ocean Atlantic Development Corp. vs. Willow Tree Farm et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion to Compel Production of Documents [#72] is granted in part and denied in part. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | 3 number of notices |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | AUG 23 2002 date docketed |
| | Docketing to mail notices. | CV docketing deputy initials |
| | Mail AO 450 form. | |
| ✓ | Copy to judge/magistrate judge. | 8/22/2002 date mailed notice |
| FT/*psey* courtroom deputy's initials | | FT mailing deputy initials |

Date/time received in central Clerk's Office

Document Number

80

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|                                                        |     |                                        |
| ------------------------------------------------------ | --- | -------------------------------------- |
| OCEAN ATLANTIC DEVELOPMENT CORPORATION,                | )   | NO. 01 C 5014                          |
|                                                        | )   |                                        |
| Plaintiff,                                             | )   | Judge Joan H. Lefkow                   |
|                                                        | )   |                                        |
| v.                                                     | )   | Magistrate Judge                       |
|                                                        | )   |  Arlander Keys                         |
| WILLOW TREE FARM, L.L.C., DRH CAMBRIDGE HOMES, INC.,   | )   |                                        |
| ELDA ARNHOLD, and BYZANTIO, L.L.C.                     | )   | DOCKETED                               |
|                                                        | )   | AUG 2 3 2002                           |
| Defendants.                                            | )   |                                        |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff Ocean Atlantic Development Corporation's ("Ocean Atlantic") Motion to Compel the production of allegedly privileged documents from Defendant DRH Cambridge Homes ("Cambridge"). For the reasons set forth below, Plaintiff's Motion is granted in part and denied in part.

### BACKGROUND FACTS

Ocean Atlantic's current Motion does not warrant a recitation of the long and tortuous history that led to the filing of this lawsuit; those facts have been fully set forth in this Court's *Ocean Atlantic Development Corp. v. Willow Tree Farm, L.L.C.*, No. 01 C 5014, 2002 WL 649043 (N.D.Ill. April 19, 2002), and the Court will not repeat them here. The Court will discuss only those facts



that are relevant to this Motion to Compel.

In preparation for a large residential development, Ocean Atlantic negotiated an easement agreement ("Easement") with the owners of Willow Tree Farm. Willow Tree Farm is adjacent to the development site (the "Property"), and the easement was considered to be critical to the ultimate success of the development project.[1] On December 31, 1998, Ocean Atlantic and Willow Tree Farm recorded the Easement, granting Ocean Atlantic the right to construct a storm drainage water pipeline ("pipeline") across Willow Tree Farm to service the proposed residential development. The Easement Agreement called for construction of the pipeline to be completed by June 30, 2001.

Before construction of that pipeline began, however, Ocean Atlantic became embroiled, yet again, in litigation with the owners of the Property (the "Property Owners"). On February 28, 2001, this Court ruled that Ocean Atlantic had materially breached its contract with the Property Owners, and that, therefore, the Property Owners were under no contractual obligation to sell the Property to Ocean Atlantic. Following this ruling, and perhaps even before it, the Property Owners entered into negotiations with Cambridge to sell the Property. In addition to the Property,

---

[1] Although it was Ocean Atlantic Woodland Corporation that entered into the contract to purchase the Property, it was Ocean Atlantic Development Corp. that negotiated the Easement Grant with Willow Tree.

2

however, Cambridge sought to obtain an easement from Willow Tree Farm.

Between May and July of 2001, Cambridge studied the feasibility of obtaining an easement from Willow Tree Farm, and possible alternative sources. In the meantime, Willow Tree Farm informed Ocean Atlantic that, pursuant to the terms of their contract, the Easement would be null and void, unless Ocean Atlantic constructed its pipeline by June 30, 2001. Ocean Atlantic apparently reassured Willow Tree Farm that the pipeline construction would proceed as scheduled, despite all evidence to the contrary, and even though Ocean Atlantic had lost the right to develop the adjacent Property. After an allegedly stormy relationship with Ocean Atlantic, the owners of Willow Tree Farm were purportedly apprehensive about negotiating a second easement agreement with yet another large development company. As such, Willow Tree Farm refused to negotiate with Cambridge.

Cambridge enlisted the assistance of the Property Owners to secure an Easement from Willow Tree Farm. During the late spring and summer of 2001, the Property Owners contacted Willow Tree Farm in an effort to secure an easement on behalf of Cambridge. Cambridge correctly guessed that Willow Tree Farm's owners would be more receptive to an offer coming from their neighbors – the Property Owners – than from Cambridge.

By July 1, 2001, the Property Owners had secured an easement agreement on behalf of Cambridge. Cambridge and the Property Owners agreed to indemnify Willow Tree Farm in the event that it was sued by Ocean Atlantic.

Ocean Atlantic responded predictably, filing the instant breach of contract suit against Willow Tree Farms on June 29, 2001, (one day before the deadline for construction of the pipeline) for allegedly failing to provide written approval of specifications and by denying Ocean Atlantic access to its property to begin construction of the pipeline. Ocean Atlantic subsequently amended its Complaint to add Cambridge as a defendant, alleging tortious interference with its contract.

In its present Motion, Ocean Atlantic seeks, mostly to compel communications relating to Cambridge's bid to secure an easement from Willow Tree Farm.

## DISCUSSION

Ocean Atlantic contends that Cambridge is improperly withholding documents and communications responsive to its interrogatories and production requests. Cambridge contends that these documents are protected by the attorney-client privilege and/or the work product doctrine.

Because this is a diversity action, Illinois law, and not federal law, controls the Court's application of the attorney-client privilege in this case. *Urban Outfitters, Inc. v. DPIC Co., Inc.,*

203 F.R.D. 376, 378 (N.D. Ill. 2001)(citing Fed. R. Evid. 501). While state law applies to the rules governing the attorney-client privilege, "the source of law in work-product terms is federal rather than state." *A.O. Smith Corp. v. Lewis, Overbeck & Furman,* No. 90 C 5160, 1991 WL 192200, at *4 (N.D. Ill. Sept. 23, 1991). The party seeking to invoke either the attorney-client privilege or the work product doctrine bears the burden of demonstrating that the privilege should apply. *See FMC Corp. v. Trimac Bulk Trans. Serv.,* No. 98 C 5894, 2000 WL 1745179, at * 1 (N.D. Ill. Nov. 27, 2000).

### A. The Attorney-Client Privilege

The attorney-client privilege seeks to encourage full and frank communications between a client and its attorney, by removing the threat that the communications would be exposed in litigation. *See* 134 Ill.2d R. 201(b)(2). Illinois courts interpret the privilege narrowly; it is the privilege itself, and not the duty to disclose such communications, that is the exception to Illinois' policy of encouraging full disclosure. *Consolidation Coal Co. v. Bucyrus-Erie Co.,* 89 Ill.2d 103, 117- 19, 432 N.E.2d 250 (Ill. 1982).

The Illinois Supreme Court set forth the elements of the attorney-client privilege in *People v. Adam,* 51 Ill.2d 46, 48, 280 N.E.2d 205 (1972):

1)Where legal advice of any kind is sought 2) from a

5

> professional legal advisor in his capacity as such 3) the
> communications relating to that purpose 4) made in
> confidence 5) by the client 6) are at his instance
> permanently protected 7) from disclosure by himself or
> the legal advisor 8) except the protections be waived.

In the corporate context, the attorney-client privilege protects only discussions between an attorney and members of the corporation's control group, which typically includes those in top management positions. *See Abbott Labs. v. Airco, Imc.*, No. 82 C 3292, 1985 WL 3596, at *3 (N.D. Ill. Nov. 4, 1985). The Illinois Supreme Court acknowledged that limiting the control group to top management employees was too narrow, and adopted the following test: "if the employee . . . is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority," he will be considered a part of the control group. *Consolidation Coal*, 89 Ill.2d at 114, 120, 432 N.E.2d 250 (explaining that "[a]n employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion . . . is properly within the control group.")

In this case, Defendant has failed to submit any evidence tending to show that the following individuals should be considered members of its control group: Russ Schlatter, who holds an unidentified position in Cambridge's finance department, Jeff Thompson, who holds an unidentified position in Cambridge's land

6

acquisition department, and Cambridge "assistants" Tammy Coutre, Beverly Rodriguez, Carol Hoskins, Mara Ehrhardt, and Pam Pantle. *See generally, Mlynarski v. Rush Presbyterian-St. Luke's Med. Center,* 213 Ill. App.3d 427, 431-32, 572 N.E.2d 1025, 1028 (1st Dist. 1991) (unrebutted affidavit explaining that an employee's advice and opinions were central to any decision to settle or litigate the matter was sufficient evidence that the employee was a member of the control group.)

With regard to Messrs. Schlatter and Thompson, there is no evidence that these individuals occupied an advisory role, such that a decision would not normally be made without their advice or opinion, or that they otherwise contributed to decision- making on legal (as opposed to business) issues. Similarly, with regard to Ms. Coutre, Ms. Rodriguez, Ms. Hoskins, Ms. Ehrhardt, and Ms. Pantle, Defendant has failed to establish that these assistants were acting as "ministerial agents" for the purpose of facilitating legal advice, *Abbott Labs*, 1985 WL 3596, at *3 (holding that notes taken by a secretary were privileged because the secretary "was acting as a ministerial agent of either counsel imparting legal advice . . or top management requesting legal advice." ), or whose input was otherwise required prior to making decisions on legal issues.

Because Cambridge has not submitted evidence demonstrating that these individuals are in its control group, communications

disclosed to these individuals waives any claim of confidentiality. Therefore, the attorney-client privilege does not protect from disclosure the following documents: 1) Steve Goodman's May 3, 2001 E-mail to the "Proposed Projects Team[2]"; 2) Steve Goodman's May 8, 2001 Memo to Doug Brown and the Proposed Projects Team; 3) Erik Sandstedt's May 30, 2001 E-mail and Response to Steve Goodman, Tammy Coutre, Beverly Rodriguez, Carol Hoskins, Doug Brown, Jerry Conrad, Mara Ehrhardt, Pam Pantle, and Tom Koenig; 4) Steve Goodman's July 13, 2001 Memo regarding the Plainfield Storm Sewer Update; and 5) the E-mails exchanged between Doug Brown and Steve Goodman, and "cc'd" to Erik Sandstedt, Jerry Conrad, Mara Ehrardt, and Pam Pantle on July 27, 29, and 30, 2001.

The Court further finds that Cambridge has failed to present any evidence whatsoever as to whether George Seagraves, the Northeast Regional President for DR Horton, Cambridge's parent company, was a member of Cambridge's control group[3]. Therefore, Doug Brown's June 5, 2001 letter to Mr. Seagraves and Mr. Goodman's June 11 and 12, 2001 E-mails with Mr. Seagraves and others are not

---

[2] The Proposed Projects Team apparently included, among others, Russ Schlatter, Jeff Thompson, Tammy Coutre, Beverly Rodriguez, Carol Hoskins, Mara Ehrhardt, and Pam Pantle.

[3] Some of the communications with Mr. Seagraves were also distributed to other employees of DR Horton; once again, Cambridge presents no evidence demonstrating that James Peebles (V.P. and legal counsel for the Northeast region of DR Horton), Herb Haertner (DR Horton accounting manager) and Debbie Acree (Sr. accounting assistant to Mr. Haertner) are members of Cambridge's control group.

protected by the attorney-client privilege.

However, the Court finds that the following documents consist of confidential communications, between counsel and members of Cambridge's control group, for the purpose of giving or receiving legal advice: 1) May 17, 2001 Memo from Steve Goodman (Cambridge's General Counsel) to Jerry Conrad, Erik Sandstedt, Doug Brown and Tom Koenig (all top-level Cambridge executives); 2) May 31, 2001 Memo from Tom Koenig to Steve Goodman; 3) May 31, 2001 Memo from Doug Brown to Jerry Conrad; 4) June 15, 2001 E-mail from Steve Goodman to Doug Brown and Jerry Conrad; 5) July 10, 2001 E-mail from Steve Goodman to Doug Brown, Richard Brown, Jerry Conrad, Tom Koenig, and Erik Sandstedt; 6) July 13, 2001 E-mail from Steve Goodman to Doug Brown; 7) January 24, 2002 Memo from Steve Goodman to Doug Brown, Jerry Conrad, and Erik Sandstedt; 8) February 26, 2002 letter from Steve Goodman to current counsel Terrence Campbell, Doug Brown, Jerry Conrad, and Erik Sandstedt; and 9) March 20, 2002 E-mail from Steve Goodman to Terrence Campbell, forwarding a Memo analyzing the risk of litigation with Ocean Atlantic. The attorney-client privilege protects these documents from disclosure.

### B. Work Product Doctrine

The work product doctrine protects from disclosure documents and tangible things otherwise discoverable that were "prepared in anticipation of litigation or for trial by or for another party or

9

by or for that other party's representative." Fed. R. Civ.P. 26(b)(3). "It exists so that one party does not gain an unfair advantage over another party by learning the other party's counsel's strategies and legal theories." *Minnesota School Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau,* 183 F.R.D. 627, 630 (N.D. Ill. 1999)(citation omitted).

For documents prepared prior to the filing of a lawsuit, as in the case at bar, the "prospect of litigation" must be identifiable because of specific claims that have already arisen. *Panter v. Marshall Field & Co.,* 80 F.R.D. 718, 725, fn 6 (N.D. Ill. 1978)(citation omitted). The test is "whether in light of the factual context the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Wsol v. Fiduciary Management Associates,* Inc., No. 99 C 1719, 1999 WL 1129100, at *2 (N.D. Ill. Dec. 7, 1999)(citation omitted). Although the prospect of litigation need not be imminent, it must, nevertheless, appear that the primary motivating purpose behind the creation of a document must be to aid in possible future litigation. *Dometic Sales Corp. v. Intertherm, Inc.,* Civ. No. S87-81, 1988 WL 492342, at * 11 (N.D. Ind. March 28, 1988) (quotation and citation omitted).

Although the work product doctrine is broader than the attorney-client privilege, it is not absolute. The privilege may be overcome if the party seeking the discovery can demonstrate a

substantial need for the document and that it cannot otherwise obtain the material absent undue hardship. *E.E.O.C. v. International Profit Assocs., Inc.*, 206 F.R.D. 215, 221 (N.D. Ill. 2002).

In addition, there are different standards applied for waiver of work product protected communications as compared to attorney-client communications. Unlike the attorney-client privilege, which is based on protecting the confidentiality of communications between lawyers and clients, the work product doctrine is based on promoting the adversary system, by protecting the confidentiality of materials prepared by an attorney in anticipation of litigation. *Wsol*, 1999 WL 1129100, at * 6 (citation omitted). Waiver of the work product doctrine only occurs if the disclosure to a third party is "inconsistent with the maintenance of secrecy for the disclosing party's adversary." *Minnesota School Boards,* 183 F.R.D. at 631 (citation omitted); *see also Bramlette v. Hyundai Motor Co.*, No. 91 C 3635, 1993 WL 338980, at *3 (N.D. Ill. Sept. 1, 1993)("While any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the confidential relationship and thus waives the privilege, it is not inconsistent with work product protection to disclose information in the pursuit of trial preparation, so long as the information is maintained in secrecy against the opponent.")

The Court finds that Cambridge was concerned about Ocean

Atlantic filing suit against it since at least 2001. Cambridge's communications frequently reference its fear that Ocean Atlantic would file suit against it for proceeding with its proposed development, and remark on Ocean Atlantic's litigious nature. Therefore, the Court finds that the prospect of litigation was identifiable at the time these documents were created.

In addition, the Court finds that Cambridge expected that its communications with executive assistants and certain other members of Cambridge's "Projects Team" would remain confidential and protected from adversaries such as Ocean Atlantic, even though many of the Projects Team Members were not demonstrated to be members of Cambridge's control group. While the disclosure of such communications waives the attorney-client privilege, the disclosure does not waive application of the work product doctrine. Therefore, the Court must determine whether any of the communications with non-control group team members are, nevertheless, protected under the work product doctrine.

Upon review, the Court finds that most of the communications with the non-control group Project Team Members were most likely produced in the ordinary course of business, and not primarily for the purpose of obtaining legal advice. A document is only considered work-product if it is primarily concerned with legal assistance. *In re Stern Walters Partners, Inc.,* No. 94 C 5705, 1996 WL 115290, at * 4 (N.D. Ill. March 13, 1996)(citation

omitted).[4]  Documents created in the ordinary course of business are not protected work product.  *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 86 (N.D. Ill. 1992) (Documents prepared in the ordinary course of business are not work product even if litigation is pending.)  Similarly, "a document prepared for both legal and non-legal review is not privileged."  *In re General Instrument Corp.,* 190 F.R.D. 527, 530 (N.D. Ill. 2000)

Cambridge contends that the May 3, 2001 Summary of Plainfield Due Diligence and the May 8, 2001 Farmington Village Executive Summary were created at a time when it reasonably believed that litigation with Ocean Atlantic was unavoidable, if not imminent. But Cambridge fails to explain why such documents would not have been prepared absent the threat of litigation with Ocean Atlantic. B.F.G. of Ill. v. *Ameritech Corp,* NO. 99 C 4604, 2001 WL 1414468, at *3 (N.D. Ill. Nov. 13, 2001) ("There is a 'causation' element insofar as production of the material must be caused by the anticipation of litigation.")  It seems unlikely that Cambridge would commit to such a large development project without conducting due diligence or preparing its Executive Summary.

Similarly, the E-mails sent on May 30, 2001, regarding the

---

[4] It is important to note that the work product doctrine extends to documents prepared by a party's representative or agent and not just the attorney. *See, e.g., Ventre v. Datronic Rental Corp.,* No. 92 C 3289, 1993 WL 524377, at *3 (N.D. Ill. Dec. 13, 1993).

Plainfield conversations with John Argoudelis, concern primarily business issues that would have arisen even absent the threat of litigation, and are, therefore, not work product. However, the E-mails sent on July 13, 2001, regarding the Plainfield Storm Sewer Update, and on July 29 and 30, 2001, regarding Mr. Ferraguto, consist primarily of legal advice, and are, therefore, protected.

The June 5, 2001 letter to Mr. Seagraves, regarding the Financial Projection for Farmington Village, as well as the June 11 and 12, 2001 E-mails to Mr. Seagraves and others from Mr. Goodman, appear to be simply project updates from Cambridge to its parent company. These documents discuss legal as well as business issues that would have arisen even absent the threat of litigation. Therefore, the Court finds that the documents were more likely than not created in the ordinary course of business and are not protected by the work product doctrine.

Finally, the Court finds that Mr. Goodman's handwritten notes on a July 12, 2001 letter from John Argoudelis[5] are entitled to work product protection. Because Ocean Atlantic makes no argument that undue hardship nevertheless compels the production of these documents, the Court denies Ocean Atlantic's Motion with regard to the July 13, 2001 E-mail regarding the Plainfield Storm Sewer Update, the July 27 and 30, 2001 E-mails regarding Mr. Ferraguto,

_____

[5] Cambridge represents that the underlying letter from Mr. Argoudelis has been produced to Ocean Atlantic.

and Mr. Goodman's notes on the July 12, 2001 letter from Mr. Argoudelis.

## CONCLUSION

Cambridge bears the burden of establishing that the attorney-client privilege and the work product doctrine permit it to withhold certain relevant information. With the exception of communications that were limited to presumptive members of its control group or that consisted exclusively of legal advice, Cambridge has failed to shoulder its burden.

**IT IS HEREBY ORDERED** that Plaintiff's Motion To Compel the Production of Documents be, and the same hereby is, **GRANTED in part**, and **DENIED in part**, as set forth above. The documents for which the Court has not found the existence of a privilege are to be produced within seven days of this decision.

Dated: August 22, 2002          ENTER:

_Arlander Keys_
ARLANDER KEYS
United States Magistrate Judge

15